# United States District Court

## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

**V.**

RHONDA BADGER

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:17-mj-00304

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or between August 10, 2016 and April 10, 2017, in Marion County, in the Southern District of Indiana defendant did,

Sex Trafficking of a Minor; and Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises.

in violation of Title 18, United States Code, Sections 1591 and 1952(a)(3). I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached Affidavit.

**Continued on the attached sheet and made a part hereof.**

Michelle Bartelson

**Sworn to before me, and subscribed in my presence**

April 25, 2017 at Indianapolis, Indiana
**Date**

Mark J. Dinsmore, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

# AFFIDAVIT

I, Michelle Bartelson, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

## INTRODUCTION

A. **Affiant**: I am a Special Agent with the Federal Bureau of Investigation, and have been for approximately seven years. I have been assigned to the Indianapolis Field Office since my graduation from the FBI Academy. While working in the Indianapolis Field Office, I was assigned to the White Collar Crime and Public Corruption Squad, where I investigated criminal violations of Title 18, United States Code, including Sections 1341 (mail fraud), 1343 (wire fraud), 1001 (false statements), and 666 (theft or bribery concerning programs receiving federal funds). I am currently assigned to the Violent Crimes Against Children Task Force, where I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography, juvenile prostitution, commercial sex trafficking and human trafficking. I have been involved in seizures and investigations relating to victims who were threatened, forced, coerced and enticed into performing sex acts. I have participated in the execution of search warrants and seized evidence related to the offenses of human trafficking. I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

B. **Information Provided:** The statements in this affidavit are based on my personal observations, my training and experience, my investigation of this matter, and information obtained from other agents and witnesses, including FBI Task Force Officer Gabriel Cuevas ("TFO Cuevas"). Because this affidavit is being submitted for the limited purpose of securing a Criminal

Complaint and Arrest Warrant, I have not included each and every fact known to me concerning this investigation.

C. **Requested Court Action:** I request the Court to issue a Criminal Complaint and Arrest Warrant charging **Rhonda BADGER ("BADGER")** with knowingly violating the following statutes:

1. Sex Trafficking of a Minor: 18 U.S.C. § 1591(a)(1) and (b)(2) and (c) makes it a crime to, in or affecting interstate commerce, knowingly recruit, entice, harbor, transport, provide, advertise, maintain, patronize or solicit by any means a person that defendant knew was less than eighteen years old, or who the defendant had a reasonable opportunity to observe, knowing that the person would be caused to engage in a commercial sex act.

2. Sex Trafficking of a Minor (financial benefit): 18 U.S.C. § 1591(a)(2) and (b)(2) makes it a crime to knowingly, in or affecting interstate or foreign commerce, benefit, financially or by receiving anything of value from participation in a venture which has engaged in recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing or soliciting, by any means, a person, knowing that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

3. Interstate and Foreign Travel or Transportation in Aid of Racketeering Activity: 18 U.S.C. 1952, in pertinent parts, makes it a crime to knowingly travel in interstate or foreign commerce or to use the mail or any facility in interstate or foreign commerce, with intent to **(1)** distribute the proceeds of any unlawful activity; or **(2)** commit any crime of violence to further any unlawful activity; or **(3)** otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on,

of any unlawful activity and thereafter performs an act described in parts (1), (2), or (3).

D. **Relevant Indiana Statutes:**

1. Promoting Prostitution: A person who: (1) knowingly or intentionally entices or compels another person to become a prostitute; (2) knowingly or intentionally procures, or offers or agrees to procure, a person for another person for the purpose of prostitution; (3) having control over the use of a place, knowingly or intentionally permits another person to use the place for prostitution; (4) receives money or other property from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution; or (5) knowingly or intentionally conducts or directs another person to a place for the purpose of prostitution; commits promoting prostitution, a Level 5 felony. However, the offense is a Level 4 felony under subdivision (1) if the person enticed or compelled is under eighteen (18) years of age. I.C. 35-45-4-4

2. Theft: A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft. I.C. 35-43-4-2

3. Robbery: A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery. I.C. 35-42-5-1

4. Dealing in Cocaine of a Narcotic Drug: A person who: (1) knowingly or intentionally: (C) delivers; or (D) finances the delivery of; cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; or (2) possesses, with intent to: (C) deliver; or (D) finance the delivery of; cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; commits dealing in cocaine or a narcotic drug. I.C. 35-48-4-1(a)

## CRIMINAL CHARGES

E. The Government is charging the Defendant under two statutes, encompassing the different legal theories that the statutes permit. This defendant Rhonda BADGER, acted in concert with at least two other individuals, including TYRECE JONES (JONES) and NAHTAHNA GARCIA HERRERA (GARCIA), in trafficking Minor Victim 1 and in participating in the Commercial Sex Enterprise. JONES, GARCIA, and Vaughn ISOM were charged together in a complaint filed on April 12, 2017. In this complaint affidavit, the Government charges the sex trafficking of Minor Victim 1, alleging the role that BADGER played in the trafficking of Minor Victim 1, Secondly, the Government charges BADGER for her role in the Commercial Sex Enterprise.

1. COUNT I: RHONDA BADGER did, on or between August 10, 2016 and January 1, 2017, in or affecting interstate commerce, knowingly recruit, entice, harbor, transport, provide, maintain or obtain a person, Minor Victim 1, that defendant knew was more than fourteen years of age but less than eighteen years of age, or who the defendant had a reasonable opportunity to observe, knowing that Minor Victim 1 would be caused to engage in a commercial sex act in violation of 18 U.S.C. § 1591;

2. COUNT II: RHONDA BADGER, on or between August 1, 2016 and April 10, 2017, for the purpose of furthering the criminal activities of a racketeering enterprise, did knowingly use any facility in interstate or foreign commerce, with the intent to promote, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, specifically promoting prostitution, in violation of the laws of the states of Indiana, and did, thereafter, engage in the offense of Promoting Prostitution, Robbery, and Dealing in Cocaine or Narcotics, in violation of Title 18, United States Code, Section 1952(a)(3)

## DEFINITIONS

F. The following definitions apply throughout this affidavit:

1. Sex Trafficking: The term "sex trafficking" means the recruitment, harboring, transportation, provision, obtaining, patronizing, advertising, or soliciting of a person for the purpose of a commercial sex act.

2. Commercial Sex Act: The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.(18 U.S.C. §1591 (e)(3))

3. Venture: The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity. (18 U.S.C. 1591(e)(5)).

4. Terminology common to commercial sexual activity:

a. Work: to engage in commercial sex acts

b. Work the phone: to arrange for "dates" for another person and communicate with "johns, plays, or tricks."

c. Backpage.com: A classified ad website frequently used by traffickers to post advertisements for sex. Backpage has replaced Craigslist as the dominant online venue for trafficking. Backpage users supply text and photographs through the website to create online ads, including advertisements for commercial sex activity.

d. "Dates," "calls" "working:" an event involving consideration (money, food, shelter, drugs) for sex.

e. "Tricks" "client" or "johns": an individual who buys sex.

f. In-call: When a buyer comes to a residence/hotel room for sex.

g. Outcall: When the prostituted person goes to the residence/hotel

room of a buyer for sex.

h. Car Date: Car dates occur when commercial sexual activity is provided inside of a vehicle.

i. Quick visit: Commercial sex act transaction that is to last 15 minutes or less.

j. Pop: "Pop" is a common street term to describe ejaculation during sexual activity.

k. "Girls" is used throughout the affidavit to refer to females, both juveniles and adults, who engage in commercial sex acts.

## RELEVANT ADDRESSES

G. Throughout this Affidavit there are two property descriptions frequently used by witnesses when describing the locations of criminal activity, both of which are located within the Southern District of Indiana:

1. The Exeter address: The Exeter address refers to a duplex that has the address of 609 and 611 Exeter Avenue, Indianapolis, IN. Both sides of the duplex can be accessed by the other and there are rooms within the duplexes for rent. The duplex is managed by Aaron Andrews, as he received rent from various tenants. The Exeter address is commonly referred to as "the building" by the individuals involved in the enterprise.

2. The "Sugar Shack:" The Sugar Shack is the basement of 726 North Rochester Ave., Indianapolis, IN. The property was ISOM's residence.

## IDENTIFICATION OF PARTICIPANTS IN ENTERPRISE

H. Rhonda BADGER (BADGER) is charged in this complaint. BADGER is Tyrece JONES' mother. BADGER is also known as "Red." BADGER conspired with JONES and GARCIA to entice Minor Victim 1 to engage in commercial sex acts for the financial benefit of

JONES.

I. The Government charged three other defendants in a criminal complaint filed on April 12, 2017. Because they acted in concert with BADGER, their involvement in the enterprise and sex trafficking of minors is briefly summarized below. They will be mentioned throughout this affidavit as their criminal behaviors are relevant to the conduct alleged to have been committed by BADGER.

1. NAHTAHNA GARCIA HERRERA: Throughout the times relevant to this complaint, GARCIA earned money for herself and others by engaging in prostitution and by having others, including at least two minor children, engage in commercial sex acts. GARCIA was known as "Nonnie" or "Nana." She also was involved in a romantic relationship with JONES. GARCIA arranged for commercial sex transactions using online advertising and direct communications with the johns, and she instructed others on how to engage in online advertising.

2. VAUGHN ISOM: Throughout the times relevant to this complaint, ISOM supplied illegal drugs to those who engaged in commercial sex acts, which financially benefited him and GARCIA. ISOM transported girls for the purpose of having them engage in commercial sex acts, and he also provided them with a place to engage in commercial sex acts at the Sugar Shack. ISOM was also known as "Gino" and "Dirty."

3. TYRECE JONES: JONES is the now 23-year old son of Rhonda BADGER, a former boyfriend of Minor Victim 1, and a current or former boyfriend of GARCIA. During times that JONES was incarcerated, GARCIA raised money for JONES using the commercial sex enterprise. JONES is also known as "Ty."

## THE COMMERCIAL SEX ENTERPRISE

J. **The Commercial Sex Enterprise:** At all times, GARCIA, ISOM, JONES, and BADGER were residents of Indianapolis, in the Southern District of Indiana. Together and individually, these defendants engaged in various forms of criminal activity, which violated the laws of the United States Code, as well as the laws of the State of Indiana. The criminal activity centered around prostitution of both minors and adults, but also included the illegal distribution of drugs, theft, acts of intimidation, and robbery. The commercial sex enterprise was run mostly out of the Exeter addresses and the Sugar Shack, and multiple females engaged in acts of commercial sex, at the direction or with the support of GARCIA, ISOM, and others. For the purposes of operating this enterprise, GARCIA, ISOM, and a man named Dale Brown, Jr. (BROWN) would recruit females to engage in commercial sexual activity. BROWN died of a drug overdose in November of 2016; however, prior to that point, he was involved in sex trafficking activity with GARCIA. GARCIA, BROWN and ISOM recruited females through known associates and word of mouth. GARCIA and ISOM were able to harbor, shelter, obtain and maintain females by providing them with a place to stay at one of the Exeter addresses. The Sugar Shack, located in a residence owned or rented by ISOM, served as a place where prostitution activity involving both minors and adults occurred. Primarily, GARCIA ran the commercial sex enterprise, recruiting the "girls," including Minor Victim 1 and Minor Victim 2, creating and posting online advertisements for commercial sex, arranging the "dates" by responding to those who answered the online advertisements. GARCIA would communicate by cell phone with individuals seeking to engage in commercial sexual activity with these females and would set the terms of what was to happen during the "date." Either GARCIA collected the money from the "plays" herself or the females would give all or some of the money to GARCIA. Prior to her partnership with ISOM, GARCIA worked with BROWN (aka "Mac" or "Cam."). ISOM also participated in the recruitment of girls, but his

primary roles focused on harboring / maintaining the girls by giving them a place to live and to engage in acts of commercial sex (known in Indiana as "Promoting Prostitution,") and also supplying the girls with drugs. By supplying them with drugs illegally, ISOM created both a supply and demand: the girls needed the drugs, so they would engage in commercial sex to pay for the drugs, and when they "worked" and had money for drugs, there was a demand for the substances, which ISOM supplied. JONES and GARCIA were romantically involved, and they conspired to use the proceeds from the commercial sex enterprise to financially benefit JONES when he was incarcerated for engaging in other forms of illegal activity. BADGER was JONES' mother. When BADGER first met MINOR VICTIM 1, BADGER financially benefited from the commercial sex acts in which MINOR VICTIM 1 engaged. BADGER also distributed illegal drugs to Minor Victim 1 and others. When BADGER's son JONES was in jail, BADGER harbored and transported Minor Victim 1 as Minor Victim 1, at the direction of GARCIA, JONES, and BADGER, engaged in commercial sex acts to financially benefit JONES.

1. Sex Trafficking of Minors: As will be fully explained in paragraphs K and L, the Commercial Sex Enterprise involved the Sex Trafficking of Minors.

a. *Minor Victim 1* was trafficked by GARCIA, ISOM, JONES, and BADGER. Minor Victim 1 was introduced to GARCIA and ISOM through her relationship with JONES and his mother BADGER. While GARCIA generally worked Minor Victim 1, posting ads, arranging "dates," and taking her money, ISOM and BADGER also transported Minor Victim 1 for the purpose of commercial sex. The money from the trafficking of Minor Victim 1 went to financially benefit GARCIA, ISOM, BADGER, and JONES. In so doing, all parties not only violated the federal law, 18 U.S.C. 1591 (Sex Trafficking of a Minor) but they also violated Indiana Law regarding Promoting Prostitution.

b. *Minor Victim 2* was trafficked by GARCIA and BROWN. BADGER was not involved in trafficking Minor Victim 2, but BADGER was part of the commercial sex enterprise with GARCIA. The trafficking of Minor Victim 2 was in violation of federal law, 18 U.S.C. 1591 (Sex Trafficking of a Minor) and the Indiana laws regarding Promoting Prostitution.

2. Prostitution Activity Involving Adults: The Commercial Sex Enterprise also involved prostitution activity involving adults engaged in acts of prostitution. GARCIA and ISOM recruited females to work. GARCIA sometimes arranged acts of commercial sex by working the phones, managing the online ads, and taking photographs to be featured in the ads. ISOM provided a place for the acts to occur and provided a place for those involved in prostitution to live.

3. Theft / Robbery: As part of the Commercial Sex Enterprise, some individuals also engaged in robberies and thefts.

a. In a recorded jail call from January 4, 2017, BADGER bragged about participating in a residential robbery with JONES and others. BADGER said that she fired a gun during the course of the robbery and that a victim of the robbery was injured. BADGER said that "they" took all of the televisions and "everything" in the house. BADGER also indicated that the victims' cell phones were taken so that no one could call the police.

b. On October 18, 2016, GARCIA described riding around in a stolen vehicle looking for clients who will engage in commercial sex acts with Minor Victim 1 so that she can get money for JONES.

c. On October 14, 2016, in a recorded jail call with GARCIA, JONES said that he had participated in a home invasion robbery and that the victim of that

robbery was in the jail cell with JONES but did not recognize JONES.

4. Use of Proceeds of Commercial Sex Enterprise:

a. GARCIA used money from the commercial sexual activity of others to financially benefit ISOM, JONES, and others.

b. ISOM also directed others to engage in commercial sexual activity, including for his own financial benefit.

5. Dealing of Cocaine or Narcotics: BADGER and ISOM (as well as BROWN, prior to his death) distributed cocaine and / or other narcotics as part of the commercial sex enterprise.

a. In interviews with law enforcement, Minor Victim 1 described being supplied with drugs by ISOM. Sometimes ISOM would give her drugs and she would pay him for the drugs with proceeds from her own sex trafficking. BADGER also gave narcotics to Minor Victim 1.

b. JONES told police, in an interview on April 13, 2017, that BADGER routinely distributed illegal drugs.

**TRAFFICKING OF MINOR VICTIM 1**

K. **Trafficking of Minor Victim 1**: Minor Victim 1 is a person known to this affiant. At all times relevant to the crimes in question, Minor Victim 1 was over the age of 14 but less than 18 years of age. From October of 2016 through early December of 2016, Minor Victim 1 engaged in commercial sex acts for GARCIA, ISOM, JONES, and BADGER.

1. Minor Victim 1's Account: After her initial disclosure on December 10, 2016 that she had engaged in commercial sex acts with "Gino," "Nonnie," "KD," and "Boone," Minor Victim 1 gave three formal interviews to law enforcement (on January 3, 2017, January 10, 2017, and March 2, 2017. During those interviews, she provided the

following information[1]

a. Minor Victim 1 was introduced to GARCIA in September of 2016 through a former boyfriend JONES. JONES and Minor Victim 1 had dated for a couple of years. Minor Victim 1 positively identified GARCIA from a photo array as "Nonnie." JONES and Minor Victim 1 lived at the Exeter address for a few weeks before JONES was arrested in October of 2016.

b. After police arrested JONES, Minor Victim 1 remained at the Exeter address for a week or two before she went back to her family home. During the time that Minor Victim 1 stayed at the Exeter address, she stayed with BADGER.

c. Then, GARCIA contacted Minor Victim 1 through a social media app and asked Minor Victim 1 to help raise money for JONES' bond. TFO Cuevas obtained taxicab records from October 18, 2016, which show that on that date, GARCIA ordered a cab to deliver Minor Victim 1 to 611 Exeter Avenue. In a recorded call obtained from the cab company, GARCIA identified Minor Victim 1 by name, provided the cab company with the pick-up and drop-off address, and told the cab operator that GARCIA would pay for the cab. In arranging for Minor Victim 1 to come to the Exeter address, GARCIA transported Minor Victim 1 for the purpose of commercial sex.

d. When Minor Victim 1 arrived at the Exeter Avenue house, GARCIA told Minor Victim 1 that GARCIA and JONES had been romantically involved for about a year, which upset Minor Victim 1.

e. GARCIA told Minor Victim 1 that she could leave but that she would

1 Minor Victim 1 believed that talking to law enforcement was a way to help her leave the treatment facility faster; however, this Affiant and TFO Cuevas have stressed to Minor Victim 1 that she simply needs to tell the truth and that her providing information would not get her out faster.

have to "pull a trick" to pay back the cab fare and find her own way home. Minor Victim 1 did not do any tricks that night. In the following days, GARCIA took photographs of Minor Victim 1 using a black Metro PCS phone to utilize for Backpage advertisements. GARCIA spoke Spanish and handled all of the communications with the clients. GARCIA told the clients Minor Victim 1 would have anal sex with the tricks unbeknownst to Minor Victim 1, until the tricks showed up and gave her the money. At the direction of GARCIA, Minor Victim 1 engaged in commercial sex acts for money at the Exeter Avenue Address and at the "Sugar Shack" too, which was ISOM's house on Rochester Avenue. Most of the commercial sex acts were done at the "Sugar Shack."

f. GARCIA introduced Minor Victim 1 to ISOM. The first time Minor Victim 1 met ISOM, she was sitting on a chair on the second floor and ISOM walked over to her, pulled down his pants, and put his penis in her face. During the time that Minor Victim 1 lived at the Exeter address, Minor Victim 1 smoked marijuana on a daily basis. ISOM offered Minor Victim 1 cocaine when they wanted "to party."

g. ISOM and GARCIA transported Minor Victim 1, along with a girl identified as Minor 3 and Minor 3's daughter to engage in commercial sex. Minor Victim 1 gave all of the proceeds of her commercial acts to GARICA, who in turn gave the proceeds to "Gino," (later identified as ISOM). Minor Victim 1referred to ISOM as a "pimp."

h. Minor Victim 1 spoke with JONES while he was in jail. She heard him tell GARCIA and BADGER to put Minor Victim 1 on Backpage. Minor Victim 1 did not want to engage in commercial sex, but she did so because GARCIA and BADGER put her on Backpage and drove her to the appointments.

i. GARCIA and ISOM knew that Minor Victim 1 was only 17 years old because Minor Victim 1 told them the truth when they asked her. Additionally, both ISOM and GARCIA had multiple opportunities to observe Minor Victim 1. JONES and BADGER knew her age because of Minor Victim 1's dating relationship with JONES.

j. ISOM told Minor Victim 1 to call him "Daddy." ISOM told Minor Victim 1 that she had to give him all of the money she received from the tricks. ISOM told Minor Victim 1, "I'm taking your money, and bitch you're gonna like it."

k. Prior to meeting ISOM, Minor Victim 1 gave all of her money to GARCIA who then gave it to BROWN.

l. After JONES was released from jail, Minor Victim 1 engaged in acts of prostitution and gave JONES some of the money because, she said, she was used to doing it.

m. Minor Victim 1 identified herself in multiple Backpage postings.

n. This affiant had a conversation with Minor Victim 1 on April 21, 2017. Minor Victim 1 indicated that she had stayed on a house on Linden Street in Indianapolis, and she met BADGER through individuals who introduced her to sex trafficking and Backpage. BADGER and Minor Victim 1 lived in the home together but Minor Victim 1 said that she was unsure if any of her money from commercial sex was paid to BADGER.

2. <u>Corroboration of Minor Victim 1 through Text Messages:</u> On December 13, 2016, TFO Cuevas interviewed the mother of Minor Victim 1. After receiving consent from Minor Victim 1's mother, TFO Cuevas reviewed Minor Victim 1's cellular telephone. TFO

Cuevas observed conversations between Minor Victim 1 and a contact saved as "Nonnie GARCIA" telephone number of 317-986-0233. The conversations were dated between October 23 and October 31, 2016. The content of the messages between GARCIA and Minor Victim 1 discussed "working", "making money", "being prepared to work upon arrival", "not working on Backpage", and "wanting to do the page at Ginos and having to break him off," "phatt daddy" and having to make $150. TFO Cuevas also observed a conversation between GARCIA and Minor Victim 1 regarding a cab ride for Minor Victim 1 to the address of 722 N. Rochester Ave. The text messages included photographs of Minor Victim 1, an unidentified white female, and GARCIA.

3. Corroboration of Minor Victim 1 Through Backpage.Com Advertisements: On December 15, 2016, TFO Cuevas conducted an internet search for Backpage advertisements utilizing telephone number 317-986-0233, associated with GARCIA. Multiple Backpage ads featuring Minor Victim 1 are linked to a single Backpage account which controlled by the email address nonniegarcia04041984@gmail.com. Some on the ads for Minor Victim 1 link to a phone number that is a number for JONES and others link to a number for GARCIA.

4. Corroboration of Minor Victim 1 by Witness Female 2: On December 19, 2016, TFO Cuevas interviewed a witness known as FEMALE 2. FEMALE 2 was arrested in a prostitution sting in which she agreed to provide information to law enforcement. FEMALE 2 provided information about the trafficking of Minor Victim 1:

a. FEMALE 2 identified Minor Victim 1 in at least two Backpage ads, which TFO Cuevas showed to FEMALE 2. FEMALE 2 positively identified Minor Victim 1 using a nickname, known to law enforcement, to be associated with Minor Victim 1. FEMALE 2 recognized Minor Victim 1 and stated that Minor Victim 1

worked for GARCIA and had been giving her half of the money made through prostitution.

b. FEMALE 2 said that she and GARCIA knew how old Minor Victim 1 was, because Minor Victim 1 had told her and GARCIA.

c. FEMALE 2 stated that she believed that "Gino," a neighborhood drug dealer, introduced Minor Victim 1 to GARCIA. ISOM is also known as "Gino."

5. Corroboration of Minor Victim 1 by Female 3: On March 23, 2017, TFO Cuevas interviewed an adult female, whose identity is known to law enforcement, herein referred to as FEMALE 3, who provided the following information regarding Minor Victim 1 in a recorded interview.

a. FEMALE 3 knew GARCIA and ISOM. FEMALE 3 had lived at ISOM's house and was involved in prostitution there. She met "Martha GARCIA," who she positively identified as GARCIA.

b. When asked if ISOM and GARCIA had any juveniles working for them, FEMALE 3 identified Minor Victim 1 by her known nickname and from a photograph. FEMALE 3 said that Minor Victim 1 initially said that she was 18 years old, but later told FEMALE 3 that she was 17 years old. Minor Victim 1 has a boyfriend "Ty" (identified from an array as JONES).

c. FEMALE 3 said that GARCIA prostituted Minor Victim 1 when "Ty" went to jail. FEMALE 3 said that Minor Victim 1 did many outcalls and GARCIA transported Minor Victim 1 to those calls.

6. Corroboration of Minor Victim 1 by Female 4: On March 23, 2017, TFO Cuevas interviewed an adult female, whose identity is known to law enforcement, herein referred to as FEMALE 4, who provided the following information regarding Minor Victim

1 in a recorded interview:

a. Minor Victim 1 was 17 years old and Female 4 knew her by her nickname as well as her actual first name. Female 4 knew that Minor Victim 1 prostituted for GARCIA. GARCIA took photographs of Minor Victim 1 and other girls to post them on Backpage.

b. Minor Victim 1 lived in the Exeter address, but was kicked out because she was underage and people living at the house did not want to draw that kind of attention to the house.

7. Corroboration of Minor Victim 1 by JONES: During his interview on April 13, 2017, JONES provided this affiant with the following information regarding Minor Victim 1:

a. JONES met Minor Victim 1 through his mother, BADGER. BADGER is not his biological mother, but rather someone who took JONES in when he was younger and whom he refers to as his mother.

b. JONES told police that BADGER was allowing Minor Victim 1 to live at their house on the south side of Indianapolis where she engaged in commercial sex acts using Backpage.com. When "plays" arrived at the house for Minor Victim 1, JONES was instructed to leave. Minor Victim 1 engaged in commercial sex acts that financially benefited BADGER and another individual.

c. JONES lived at "the Building" on Exeter for about 1-2 weeks before BADGER came to live at "the Building" with him. Minor Victim 1 also went to live at "the Building." telling JONES that BADGER contacted Minor Victim 1 and told her to come "hang out."

d. JONES admitted that, when he was in jail in Marion County, he asked

Minor Victim 1 to engage in commercial sex acts in order to get the money to pay his bond.

8. Corroboration of Minor Victim 1 in Jail Calls:

a. October 5, 2016: Several statements made by JONES in a recorded jail call between JONES and Minor Victim 1 on October 5, 2016 contained the following statements:

> JONES: Repost that shit baby and come get me. I gotta be outta here today.
>
> Minor Victim 1: I have 4 hours to make $600. I know.
>
> JONES: Can you do that baby?
>
> Minor Victim 1: (Crying) Yeah
>
> JONES: No matter what, this will be the last time I ask you to do this. Can I trust you to do this for me?
> . . .
> JONES: You got like 2 or 3 hours to get this money. I know you can do it baby, I've seen you do it before.

b. October 8, 2016: On October 8, 2016, BADGER spoke to JONES about the money that Minor Victim 1 had earned. BADGER said that they money was gone. BADGER said that people were responding to Minor Victim 1's ads, but Minor Victim 1 would not respond to the potential "customers." BADGER then told JONES that BADGER had spoken to GARCIA about working ("do plays and shit to get money or whatever"). JONES told BADGER that he needed BADGER to "work" in order to get money. BADGER told JONES "Okay baby! I, I told you I would."

c. October 9, 2016: On October 9, 2016, in a recorded jail call, BADGER acknowledged that "plays" were sending messages to Minor Victim 1,

offering her money for a "quick visit," but Minor Victim 1 would not do it.

d. October 18, 2016: On October 18, 2016, BADGER spoke to JONES in a jail call. GARCIA also spoke in the phone call. The parties discussed Minor Victim 1 "working" to earn money for JONES' bail.

## TRAFFICKING OF MINOR VICTIM 2

L. **Trafficking Of Minor Victim 2:** Minor Victim 2 is a person known to law enforcement and at all times relevant to the investigation, Minor Victim 2 was over the age of 14 but less than 18 years of age. At this time, it is unknown whether BADGER had any role in the trafficking of Minor Victim 2.

## FEDERAL JURISDICTION

M. **Interstate Commerce:** In furtherance of the commercial sex enterprise and acts of sex trafficking, all defendants benefitted financially or conspired to benefit financially from the commercial sex work of females who used BACKPAGE.COM in order to engage in commercial sex. BACKPAGE.COM is located in Phoenix, AZ. BACKPAGE.COM communication requires advertisements to be posted by means of internet communication, which is a means or facility of interstate commerce.

N. **Southern District of Indiana:** The Defendant's involvement in the trafficking of Minor Victim 1 and in the Commercial Sex Enterprise all occurred within the Southern District of Indiana.

O. **Conclusion**: Based upon the foregoing, your affiant request this Court to issue an Arrest Warrant and Criminal Complaint charging the defendant with Sex Trafficking of a Minor and Interstate and Foreign Travel or Transportation in Aid of Racketeering Activity.

Michelle Bartelson
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 25th day of April 2017.

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana